All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Thank you. Good afternoon and welcome to the Browning Courthouse here in San Francisco. We welcome all of you. This is the time set for hearing the case en banc of Benjamin Kohn v. State Bar of California. So if the lawyers are ready to proceed, you may come forward. Thank you. Thank you, Chief Judge Murguia. Your Honors, may it please the Court, my name is Gregory Michael. I'm joined today by my law partner, Dorothy Yamamoto. We represent the appellant, Benjamin Kohn. If the Court permits, I'd like to reserve at least five minutes of my time for rebuttal. I'll do my best to try to warn you on that. Thank you, Your Honor. The California State Bar's process for handling disability accommodation requests for the California Bar Exam is so deficient, unworkable, and burdensome that the results it produced caused appellant, Mr. Kohn, to have to suffer through the exam four times before ultimately succeeding and being admitted to the California Bar. Unfortunately, as the many amici in this case have commented, Mr. Kohn's experiences with the State Bar in this regard are not shared just by him, but broadly across the disabled community of lawyers and aspiring lawyers. The State Bar should no longer be allowed to infringe upon federal and state-protected disability rights with impunity, and no Supreme Court case or immunity doctrine recognized by that court requires otherwise. Accordingly, this Court should reverse the District Court's dismissal of Mr. Kohn's claims and remand to that Court. How many courts have agreed with you that the State Bar does not receive sovereign immunity as an arm of the state? Crow is one, our decision in Crow. Are there any others? Not that I am aware of, Your Honor, that have addressed that issue. However, the inquiry into whether or not any entity, including a State Bar, is entitled to sovereign immunity is a very fact-specific inquiry. For example, there's cases cited by the State Bar in its most recent briefing dealing with the Alabama State Bar. I believe it's Neal's versus the State Bar of Alabama. In that case, the Treasury of the State Bar, there is no separate Treasury of the State Bar. It's completely combined with state funds. So the most critical factor dealing with the analysis of whether or not that entity is an arm of the state is completely at odds with how the California Bar is structured here. When you call it the most critical factor, where are you getting that from? Hess, the Supreme Court's decision in Hess, Your Honor, in which it recognized that, indeed, most circuits find that factor to be dispositive. But should it be? I mean, Hess was a decision from the 90s, and there's obviously been some additional developments in the law of sovereign immunity in the many decades since. So why shouldn't the financial independence be one factor as opposed to a dispositive factor, as you argue? It is not the conclusive factor in every case. That's certainly true, Your Honor, and it should not be. And Hess does not require as much. In fact, in Hess, there is considerable discussion as to the twin aims of the sovereign immunity doctrine, which is not just to protect the state's solvency, protecting states from having to declare bankruptcy, but also protecting state dignity. And that's why in Seminole Tribe v. Florida, the Supreme Court reached a decision there that even when a state is sued for injunctive and declaratory relief, so there's no damages, no threat to the solvency of the state, sovereign immunity still applies, because the state's dignity, by being named as a defendant in that lawsuit, is threatened. And therefore, sovereign immunity will still apply. So the Treasury factor is not the end-all, be-all of the analysis. That is very much true. However, Hess does indicate, as well as a variety of other decisions from the Supreme Court, that the Treasury factor is considerable, if not the most considerable factor, because not only is it something that's addressed in each and every case, whether or not the solvency of the state is threatened, but it's also one of the two reasons that the sovereign immunity doctrine exists in the first place. Council, what do you make of the fact that I think the State Bar had an argument that the budget process by the legislature is very determinative of what sort of revenues the State Bar can raise. So even though there may be mandatory fees, it goes through an annual budgeting process that is, in some ways, very at the behest of what the legislature decides to do. So there are indicia, aren't there, that it's not that independent in many ways, that it's very wrapped into state functions. Not quite, Your Honor, and here's why. So when it is a creative argument on the part of the State Bar, it's not a particular type of fact that has been analyzed by the Supreme Court in any of the cases that I've reviewed. However, the Supreme Court in Hess has directed that when the court is met by these new facts and it needs to determine, does this fact weigh in favor of sovereign immunity, against, is it completely irrelevant? You look to those two aims, state solvency and dignity. Is either one implicated? And when the State Bar is setting caps, or excuse me, the State of California is setting caps on the member fees or licensee fees that it can collect or the manner in which it can be spent, that doesn't in any way implicate the State's solvency. It might very well implicate the State Bar's solvency, but not the State's. But it does demonstrate control. Why wouldn't that be a factor we would look at? So control is a factor that can be looked at in the context of determining whether or not the entity, the defendant entity, is truly independent from the State. In a multitude of decisions, control is looked at. Most commonly what's argued, as the State Bar is arguing here, that because the State appoints the leadership of that entity, therefore there's control. Every time that argument has been made at the Supreme Court, it has failed. It's not sufficient to transform that entity into an arm of the State. Counsel, what is the controlling case that we will look at to determine whether or not sovereignty applies in this case? Are we going to be looking at Hirsch or are we going to be looking at Mitchell? Both and neither, Your Honor. So Hirsch does not actually apply the law of sovereign immunity, at least not in the opinion itself. It never addressed it. Correct. So should we reverse Hirsch? Yes, to the extent that the Court considers that assumption or uncontested issue by the parties to be a holding. If it is a holding, then the Court should very much reverse that holding. The Mitchell test itself, appellants admits that it should be refined.  But you started out your argument saying that this is a very fact-intensive analysis. Shouldn't then we send this back to the District Court to engage in that very fact-intensive analysis to determine whether or not the Mitchell factors would apply? Not in this case, Your Honor, because all of the facts that are necessary to determine the issue are already in the record or are judicially noticeable. California law is actually very detailed in establishing what the contours of the state bar's activities are, its leadership, how it receives funding. I have a question. I'm sorry. What's the difference between your test and the state bar's test for state sovereign immunity? Other than how heavily to weigh the impact of a money judgment on the state treasury, it seems like there's very little difference between them. Am I reading that correctly? I think you are, Your Honor, as far as the presentation of what the three categories or lines of inquiry the Court should really be using as the test for sovereign immunity. But when it comes to the substantive analysis, the state bar is proposing that control be basically embedded in each of those factors, and that's something that's actually disclosed by Hess. Hess very directly said that trying to assess control is too difficult. It's an unworkable standard. That's not what the sovereign immunity doctrine should hinge upon. And we had a decision in the Crow case, and I guess I wanted to see if you could explain what the similarities are or the dissimilarities or why should that not guide us, or how is it distinguishable? It absolutely should guide the Court. It is essentially on all fours here, Your Honor. The state bars have a separate treasury. In Crow, the Court did go through the Mitchell factors, and some of those factors may or may not be implicated here, but the broad categories of consideration should include the state treasury, whether or not the activities that are giving rise to the dispute and that led to the creation of the state bar are traditionally something that are performed exclusively by states, something that's preserved for states as opposed to lesser entities or private parties, and third, whether or not the entity is independent from the state, which might include looking at can it sue or be sued, can is it a separate corporation, does it have a separate identity, can it hold property in its own name. Those kinds of factors that are set forth more specifically in Mitchell are actually part of a more detailed line of inquiry about independence. Counsel, can I ask, as a historical matter, have states always regulated the admission of attorneys? Another way of, is there anything inherent in being a state in the licensing of attorneys? There is absolutely something inherent in admitting attorneys to the practice of law. Admitting, okay. Correct. But what the state bar does is not admit attorneys. That power rests solely and exclusively with the California Supreme Court. What the state bar does is it makes recommendations to the court as to whether or not a particular applicant should be admitted. The bar exam is one tool that the state bar has used to assess the strengths or qualifications of applicants. It's not actually required by California law that the state bar administer an exam. If an exam is administered, there are certain requirements that then come into play. The state bar has actually issued this blue-ribbon commission to determine whether or not there should be a bar exam or whether or not there should be substantial changes made to the bar exam. So here are the traditional powers that are reserved for the states are admitting attorneys, but that's not what the state bar does. The state bar is administering a standardized test, just like private testing entities do, including in professional licensing contexts like medical boards, law school admissions, college admissions. And you said attorney discipline is not a traditional state function? Correct, Your Honor. Why is that? If the Supreme Court ultimately has an up or down vote in both of these decisions and let's say I think the state bar's argument is by extension the state bar serves as a surrogate for something the Supreme Court would otherwise do, why shouldn't we consider that to be a state function as opposed to a regional one, for example? So it is a state activity in the sense that the state bar, there's no doubt about it, the state bar is a government actor established by the state of California. However, what's happening in the disciplinary context is the body of California lawyers are responsible for policing themselves and making sure that they're abiding by the ethical rules that attorneys ought to abide by. And you can see that even in the state of California. The state bar, which is funded by California lawyers through member dues, are now called licensee dues. That's what's paying for these disciplinary processes. The state isn't paying for it. The state isn't sending district attorneys to go after lawyers. Maybe in some cases, specific cases, that is going to happen. But by and large, as far as ethical violations, that's all paid for and done and dealt with by the state bar, the body of California lawyers paid by California lawyers. And that framework is exactly why the state bar is not an arm of the state. The state has created the state bar in such a way as to be entirely insulated or insulating itself, the state, from the state bar. It's not responsible for any of the state bar's debts or obligations. California Business and Professions Code 6008.1 makes that expressly clear. To the extent that the Supreme Court has a veto power of sorts over what the state bar can do, that's not unlike what the Supreme Court faced in some of its decisions dealing with court authorities where there's an interstate compact agreement. States may have veto power. That kind of control is not the kind of control that's relevant to the sovereign immunity analysis. Did I understand it right, though, that they could own property, but they have to have approval to spend certain of those assets? Is that what I understood? Is that incorrect? So my understanding, Your Honor, from the state bar's briefing on that issue, is that the state bar wanted to sell a building or a building that it owns. The state legislature apparently does not like that. It wants to disincentivize that sale and so has essentially threatened to lower the cap of fees that it can collect if the state bar does go through with the sale. That kind of coercive legislative control is exactly why the state bar is independent. If the state had control, direct control over the state bar, all it would do is refuse to authorize the sale. There would be no legislative power being exercised to try and disincentivize behavior that it doesn't like. And what's your best case for elucidating what degree of control one needs to have in order to tip the scales and to armor the state side versus it being too indirect as you're describing now? I think Hess is really the case that addresses a lot of these issues. In Hess, all of the commissioners were appointed by the state. But counsel in Hess, the Supreme Court focused greatly on the fact that it was a compact case. There were multiple states involved and required, I think, some sort of congressional approval to even get there. That's very different than this situation where we have just the one state. The D.C. Circuit stressed that in their opinion that Hess was this compact case whereas the Puerto Rico was not. This is not a compact case. So to get where you want to get, your reading of Hess, are you asking us in a sense to split with the D.C. Circuit's reading of that case? No, Your Honor, and to the extent that is the reading of the D.C. Circuit case, this court has already gone in that direction. Durning versus Citibank, not only were the commissioners or the board appointed by the state actors, but the governor and the state treasurers themselves sat on the board, and that was not enough control to transform the entity there into an arm of the state. And so the control analysis, for the reasons that were set forth in Hess, which is binding, including on the First Circuit as well as this one, control is not the crux of the analysis. But even if control can implicate the analysis, it only implicates the analysis to the extent it affects those two aims, those two goals of the sovereign immunity doctrine. Is it going to affect state solvency, or is it going to threaten the dignity of the state? So if it's not going to do one of those two things, then it's at maximum and it's neutral. So in the context of appointing leadership, it's not going to affect the solvency of a state, it's not going to affect the state's dignity either, because the entity is not the state of California, so the state of California is not going to be hauled into court when the state bar is sued. Moreover, on this point of dignity, California law provides that the state bar can sue or be sued, which goes not just to the independent status of the entity, but also to this concept of dignity. Well, I mean, I'm a little bit puzzled about this case and how it has developed, because before the district court, in his briefing, your client conceded that the state bar is an arm of the state, and here we are arguing about is it or isn't it, and I'm just curious, why isn't that concession governing in this case? My recollection of the record is that there was no concession. There was not an argument raised as to whether or not there was, as to this Mitchell test at the time. The state bar, in fact, in the initial round of briefing before counsel was appointed for Mr. Cohn, when this issue was raised, there was a challenge made in the subsequent replacement briefing. I'll ask the other side when it's their turn about why they didn't press this, but the way I read this briefing, it's made in the context of the Rehabilitation Act claim, but it's an out-and-out statement that the California bar is an arm of the state, referencing the defendants, the bar's own argument, with regard to sovereign immunity. So it's not just a failure to raise the argument. It's an out-and-out concession. Respectfully, Your Honor, I have to disagree. I think that the argument is a legal one. I don't recall there being a concession from the record. Perhaps there is an argument in some of the briefing that the Rehabilitation Act or immunity is abrogated or otherwise not applicable, but there's no concession. To the extent that there was a concession, the court should look past that. The state bar has not argued that it was conceded, that that should be the basis for the decision. The state bar has received treatment as a sovereign state for decades, and it has never proven its entitlement to that sovereign immunity. This court has an opportunity here to finally address this issue, apply the law of sovereign immunity, and determine whether or not it is, in fact, entitled to be an arm of the state. It should take that opportunity and do so now. So pretty much every other case that's had this issue come up has said there's sovereign immunity. Now, your position is we really have to go into the facts of those cases and look, but have you looked? Do you know, if we accept your argument, how many of these other cases are wrong? All of them, Your Honor, and for a variety of reasons. In that one case, the Alabama case, the state treasury factor, that's the biggest point of departure. In other cases, the Seventh Circuit case, I believe it was regarding the Georgia bar. That circuit is dealing with something of a similar situation here where there is a panel decision from before Hess that held that the bar was an arm of the state. It's bound by that decision. Part of that decision is that the state treasury factor not only isn't the most significant factor, it's actually the least significant factor. And in holding that the bar of Georgia was an arm of the state, the court in the Seventh Circuit did not even address the treasury factor. Under Hess, that line of reasoning is dead wrong. So to the extent that the Seventh Circuit felt bound by an earlier panel decision, they need to review that en banc. They should do so, but if that hasn't happened yet, that procedural issue should not affect the law of sovereign immunity as to the state bar. Moreover, some of these other out-of-circuit cases are relying on the Hirsch-Lupert cases in this court, which also did not apply the law of sovereign immunity, at least not facially in the opinion. It's just simply a one-sentence conclusion that the state bar is an arm of the state because it's a state agency. And they looked at that, they cite that. Therefore, oh, the bar over here is also a state agency. So go back to my question. You think Hirsch was wrongly decided because it didn't apply the Mitchell factors. I'm not sure that it is wrongly decided if the parties aren't disputing the issues. I think that there is something of a concession there. So I don't want to fault the court for taking the facts and the laws as it was delivered by the parties. It is wrong. The parties should have argued that there. They didn't, and the court didn't address the issue. So it assumed, for the sake of that case at least, that the state bar was acting as an arm of the state. Assuming the state bar is immune here, just let's assume that, do you want to address the abrogation issue? Yes, Your Honor, briefly. And I do want to make clear that the state bar, in the context of this Title II abrogation issue, the state bar is the party really here with the burden of addressing this issue. Title II expressly abrogates state sovereign immunity as to Title II claims. The state bar is raising a defense saying, oh, that statute is unconstitutional as to the state bar because Congress has exceeded its authority under Section 5 of the 14th Amendment. And, therefore, that's a legal defense and the case should be dismissed. If the state bar wants to prove that, it needs to prove that Title II failed to properly abrogate state sovereign immunity, hasn't carried that burden, and, therefore, the court's holding in that regard, which this court has already addressed in Fifer and a variety of other cases, should be reaffirmed. More importantly, the two cases that have gone to Supreme Court about abrogation or abrogation-related issues as to Title II, Tennessee v. Lane and U.S. v. Georgia, both came down on the side of the claims move forward. In Tennessee v. Lane, it had to do with a class of claims dealing with access to the courts, which is a crossover between here and then in this case. It's also a part of this case as well as the educational context of a bar exam. But Lane addressed the denial of access to the courts, which is a fundamental right that requires heightened scrutiny. I guess I'd like to hear from you how should we treat claims like yours that at least on initial review does not seem like they involve a fundamental right. The point is well taken, Your Honor. However, whether or not it is a fundamental right or not a fundamental right is not the end all be all of the analysis. The analysis is looking to whether or not the rights protected by the 14th Amendment or there was enough of a historical record there to support what Congress did. And the Supreme Court in Tennessee v. Lane actually stated, point blank, that Congress should be given a lot of deference, a lot of latitude to make those kinds of policy determinations as to whether or not abrogation should take place in order to prophylactically protect that. Well, the State Bar cites to the Tenth Circuit, and I think it's the Gutman case, where the Tenth Circuit concluded that Title II of the ADA did not abrogate immunity regarding discrimination in professional licensing. It seems to be very significant and close to what we have here. So I guess why should we not adopt the Tenth Circuit? If we go there, why shouldn't we adopt the Tenth Circuit's reasoning? It is wrongly decided, Your Honor. Specifically, particularly this is salient in the context of disability accommodations and exam. It can be physically painful or even traumatic to have to sit through a multi-day examination without being accommodated. That kind of impact on a person's body or their mental well-being is significant. It is protected by due process as to equal protection. The prejudice that's arising from the failure to accommodate here isn't just that the exam itself, maybe they're not able to perform as well on the exam. It also goes to the preparation time and ability for that exam. If the accommodation decisions are coming out in 60 days rather than 2 weeks, as would be appropriate in this kind of context, that means that disabled applicants may have to hold off on purchasing that really expensive bar preparation service. Deciding whether or not the accommodations that I'm going to receive, are they going to be enough for me to be willing to pay the expensive fee that's going to the state bar to sit for this multi-day exam? Or is there no reason to be doing this? You're down to 3 minutes and 45 seconds, so if you want to reserve the balance of your time. I will, Your Honor. Thank you very much. If there's no further questions, I'll reserve. May it please the Court. My name is Brady Dewar. I'm Counsel for the State Bar of California, and I'm joined at the table by my colleague, Rita Hines. Whether the State Bar of California is an arm of the state when it acts in attorney admissions and discipline is not a close case. The California Supreme Court has been crystal clear about the State Bar of California's role in state government. In its Rule of Court 9.3, it states, The State Bar is the administrative arm of the Supreme Court for admissions matters and in that capacity acts under its authority and at its direction. And in cases like Rose, the California Supreme Court has reaffirmed that the State Bar is its administrative arm for purposes of attorney admissions and discipline. If it gets sued, who's going to pay that judgment? The Supreme Court? Well, the Supreme Court would have immunity, but if the State Bar is sued for... My point is, Counsel, isn't there a law stating that you can't use state funds for payment of judgments against the bar? No, Your Honor, because by California state law, the funds of the State Bar, Business and Professions Code 6008, are government funds held in the judicial branch of government. They are state funds, Your Honor. They're just held in a separate account. It would be a great... Let me press you on that because it's a creative argument, but it seems to go against the statute of 6008.1. If the State of California is disavowing that it would be on the hook for obligations or judgments by the State Bar, doesn't that mean something? I understand your point. You're saying, well, these are public funds of another name, but shouldn't we have to give effect to 6008.1 in some sort of way? On its face, it's saying that the State of California itself will not be responsible for obligations incurred by the State Bar. Well, Your Honor, no case suggests... All of the cases, the Regents case, the Hess case, suggest that we look at the nature of the funds at issue. Whereas here, the state has created an agency. It has designated the funds of those agencies as state funds under the law. It's put state funds into the agency and controls how those funds are spent. Those are state funds. The fact that you go first to the State Bar doesn't change the analysis, Your Honor. In your mind, the fact that it's not part of the general fund is immaterial to this, to this treasury analysis? It is not certainly determinative of the treasury analysis, Your Honor. So state government is indemnifying the Bar for money judgments? Well, if there were a judgment against the State Bar, the state would be put to the choice of either increasing the funding to the State Bar or letting the Bar reduce or eliminate its essential services on behalf of the Supreme Court. That choice would implicate the twin rationales for sovereign immunity, those being the sovereign dignity of the state and the state fisc. What's your best case on the whole funding argument that you're making? Well, certainly I'd start with the Supreme Court's case in the Regents' case where the court observed that the reason we care about this factor is as an indicator of the relationship between the state and its creation. I would also point to this court's decisions in the Alaska cargo case where a judgment wouldn't come from the state itself, but from the state-created railroad company. There, in fact, the state control of funding was less because that railroad, unlike us, was allowed to set its own fees. Similarly, in Belanger, a judgment would be against the school district, but the court looked, in holding that the school district was an arm of the state, at the state's control of the funding source. In the Agawam case, similarly, the port authority at issue there was set up by the state, and the court held that the financial factor was met because the state would be forced to step in to backfill the essential services there. Additionally, sister circuits— I'm sorry to interrupt, but there isn't anything statutorily, no statutory text that says the state would need to step in and backfill. You're presuming, and it may not be the wrong presumption, but you're presuming what might happen if the state bar were bankrupted by a judgment. But there isn't anything in the statute today that would require the state to do that, would it? It would not be required, but it would be put to the choice of either letting the state services decline, provided by the state bar, or providing more funding. And that's a choice that the 11th Amendment does not force on states. What's the distinction between a membership-structured bar and a licensee-structured bar? And if you could just help me understand, how does that impact the state bar's immunity? Well, certainly in the Crow case, for instance, Oregon's state bar is an integrated bar. And that can be thought of as a bar sort of with two hats and two masters. On the one hand, it performs attorney admissions and discipline under the state Supreme Court. On the other hand, it has trade associational functions, such as leadership that's elected by the profession, which we don't have. All of our leadership is appointed by the three branches of state government. It can engage in advocacy on political issues, such as the political speech that was at issue in that case. So if you put an organization like that, the Oregon state bar, through the three-factor test that we propose, the intent factor is not as strong because the state has chosen to delegate its state functions to this entity that's not completely of the state. Similarly, the control factor would not as strongly support immunity in a case like Oregon's because, again, the leadership is elected by the profession, not appointed by the state. So there are some key differences. That was my question. So you are asking us to adopt that three-factor test from Judge Kavanaugh's opinion in the D.C. Circuit, the Puerto Rico case? Yes, Your Honor. And why is that better than the Mitchell test or any other test that we've, or I think you highlighted all the other different tests. Well, certainly. You know, that test, we feel, best crystallizes the Supreme Court's guidance in cases like Hess, and it advances the twin aims of sovereign immunity because if the state intends to operate as an arm of the state, then sovereign immunity respects that state's sovereign dignity when it acts through its arm. If the state controls the entity, then the state is the real party in interest in a suit challenging that entity's conduct, and the state dignity would be violated in a federal suit challenging that contact. And finally, if a plaintiff seeks to recover what are, by law and in practice because they are controlled by the state, state funds, then federal court action threatens the state's best. Does the Supreme Court criticize our Mitchell analysis in either its original form or in subsequent decisions like Crow? You know, I don't believe so. In, you know, I would, you know, the Mitchell test, for instance, does not consider explicitly control, although this court has done so in, you know, its numerous cases applying Mitchell. You know, Mitchell's mostly been applied as a rubric rather than a straitjacket. What do you make of counsel's argument that control is a very elusive standard to meet, you know, what Hess was highlighting? Hess made that observation in the context of a bi-state entity which has two masters, and in fact it said it's especially difficult there. Hess did actually consider control in its initial consideration. It considered intent factors, control factors, and state funding factors, and then it found those to point in different directions, and it said when those factors point in different directions, then we look to the twin reasons for being for the 11th Amendment, and in that case it was able to deal with sovereign dignity very quickly because that was a bi-state entity where the state had already ceded its sovereign dignity to Congress and to its sister state. Here, of course, we're dealing with the state's conduct in the shoes of the Supreme Court, so sovereign dignity is very much an interest. So we have a case law that says the source from which the sum sought by the plaintiff must come is the most important single factor in determining 11th Amendment immunity. I take it your position is that that's an overstatement? It is one of the two main factors to be considered, and here all of the state bar's funds are by law characterized as state funds held at the judicial branch, and all of the state bar's revenue comes from the state. That's through the admissions fees, which the state bar is authorized to charge at cost, through the annual licensing fee bill, which sets fees at a certain level on every year. Every year we go to the legislature, it gives us more restrictions. Those restrictions can be as detailed as what and how we can spend the money if we sell the building. But do those funds go to a general state fund, or are they specific to the bar itself? They are in the bar's separate treasury, and in the Nichols case in the 11th Circuit, the Alabama state bar had a separate state treasury account, and any judgment against it would be from that account. So what does it mean that just by virtue of state law it's state funds, but they can't be accessed by the governor, for example, correct? Or the legislature? Well, the legislature certainly could do an inter-fund transfer signed by the government. There might be some meaty separation of powers issues there that the California Supreme Court would get involved in. But ultimately, they're all state funds. Well, you say they can do that. What authority? What statutory authority? What authority would the governor be able to do that? I'm saying if the legislature passed a statute. It wouldn't require legislation though, right? Correct. But that doesn't sound like control over that money. Well, but on a year-by-year basis, the legislature appropriates money, and we have to spend it according to a budget that we submit to the legislature for its approval. So, you know, it's each year. Wait, are you saying this legislature appropriates its money? The legislature, through the fee bill, says you may collect these amounts of funds and use them. But the legislature can't go into the state bar fund and start spending their money, can they? Again, I think the Supreme Court might step in and say, you know, we have exclusive jurisdiction over this. But as of right now, you think that the state legislature or the governor can just put his hand on those funds and take it out and pay for highways? It's a little bit like the legislation that we cite where they say, hey, if you sell your building, you're going to get less. There wouldn't be any separation of powers problems with that in your mind? I did mention that. Of course, though, ultimately the decision is made by the three branches of state government. Let me clarify something else. So the legislature doesn't appropriate money to the state bar. It just sets the parameters in which the state bar can raise funds through mandatory fees, voluntary, and whatnot. There's not an appropriation from the general fund to the state bar, is there? But the effect is the same because it's setting the fees that the state bar can collect and telling it what it can spend those fees on. Just like, you know, in the context of the executive branch, the legislature has decided that certain functions won't be funded by the public through broad-based income tax, but through user fees like the DMV or gas tax for highways. The effect is the same. The control effect is the same. Can I ask about that selling the building? It does not seem like direct control if this legislature says, we don't want you to sell that building, but you can do it anyway. You're just going to have to lose, have indirect effect on your funds. Direct control would just say, the legislature would say, don't sell that building, and the state bar would have to comply. And the legislature certainly could have written the legislation that way. I'd like to actually, you know, Your Honor, you're asking about control, and I'd like to discuss that as it is one of the three important factors. Mr. Cohn's counsel focuses on the appointment of the bar's leadership by the three branches of government. That is important. That was what Hess considered. It was considered in the Puerto Rico Ports Authority case. The D.C. Circuit found that control factor to support sovereign immunity there. But it's not just that. All aspects of the admissions and discipline function are controlled by legislative enactment and by the Supreme Court. The admissions rules by which admissions are processed, including the accommodations requests that are at issue in this case, must be reviewed and approved by the Supreme Court. The Supreme Court can review all admissions decisions, including accommodations decisions. It can and it does so, and it can do so quickly. At the three-judge panel, Judge Callahan brought up a case where a paraplegic bar exam taker, and her name was Sarah Granda, was not going to be permitted to take the exam. She filed a petition to the Supreme Court. It's case S1749222, and the court on the same day ordered the state bar to resolve the payment issue and let her take the exam. So there's close control over all steps of the process by the Supreme Court. Uniquely among state entities, the Supreme Court can and does give sua sponte affirmative policy orders to the state bar. That's, again, an indicator of control that the state has and that the state exercises. Counsel, why doesn't that make the bar advisory, as the Supreme Court seemed to characterize it, in color? I mean, it seems to me that the Supreme Court took all of the same facts that you're pointing to, that the Supreme Court retains ultimate decision-making power, and that's why we think of the CS bar as largely an advisory body. And I understand your argument in your brief is, well, now things have changed because our board is appointed, but the essential function of the bar seems to remain the same. You know, I think there's two parts to that answer. First of all, in the Keller case, that observation was made in the context of the then-integrated state bar raising the government's speech defense to a First Amendment claim. And the court basically said, you know, well, you're not actually the Supreme Court. You advise it, you perform important roles, but you're not the Supreme Court, and you're certainly not the Supreme Court when you're making political speech. That observation has no relevance or application when a bar is acting in the shoes of the Supreme Court and performing its government functions. And this court actually recognized that distinction in the case Enri Wade. That's 948 F. 3rd, 1122. And in that case, it involved the Arizona state bar, and a plaintiff there tried to argue that it was not an instrumentality of the state of Arizona, and it cited that same language from Keller. And this court said, no, this case involves the state bar's governmental functions of attorney admissions and discipline, and therefore that distinction from Keller does not apply. However, all of the, you know, the bar exam, the moral character, all of these statutorily and Supreme Court rule dictated steps in the admissions process are required, you know, the Supreme Court needs those functions to be performed in order for it to make the final decision whether to admit an attorney. And so, you know, just as your clerks are advisory to you, that doesn't make the work they do any less governmental. I take it from your argument in the briefing on today that you either agree with plaintiff's counsel that no concession was made on this point below, or you don't think it matters. Well, I think that it is, number one, a legal question whether a given entity is an arm of the state. And I think that we would be pushing that argument harder had, you know, the district court and the three-judge panel not, in our view, been bound by Hirsch and Mitchell. And now we're on Bonk, and there is the opportunity to consider whether the clear holdings of those cases should be changed. But none of these arguments that we're making today, or that you are making today, and the other side is making today were presented to the district court in any form as far as I know. Correct. We took, I believe both parties took Hirsch and Lupert as controlling law. Why would they need it to have been presented? This was settled law, it seems to me, at that point. I agree, Your Honor. Counsel, what is your position on whether, assuming we thought that Miller or some version of Miller needed to be applied in this case, on whether we should decide it or remand it? What was the question? Assuming we needed to apply Mitchell to determine whether the bar is entitled to sovereign immunity or some version of Mitchell, should we decide that or should we remand it for the district court to decide in the first instance? I think that it would be appropriate, you know, for this court to decide it. You know, we do advocate adopting the D.C. Circuit test. I think it, as said, well crystallizes the Supreme Court authority in the area, and the Mitchell test historically has not been applied literally. The last three factors this court in various cases have held is entitled to little weight. For instance, the fifth corporate status in the Alaska case, the court held it doesn't matter if you're, you know, it actually supports immunity if you're all nominated and appointed by the government. The capacity to sue and be sued, we wouldn't be here if we didn't have the capacity to sue and be sued. And the state funds, or excuse me, the ability to hold property in its own name in the Sado case, this court recognized that that factors entitled to little weight, whereas here state law defines the funds and property held by the organization as state funds. If there is immunity, assuming there is immunity, do you want to speak about abrogation? Certainly, Your Honor. First of all, I think that just as this court, this en banc panel, is considering realigning the arm of the state test to match and reflect Supreme Court precedent, it would be appropriate for this panel to recognize that FIFER, which held that title II abrogates state sovereign immunity on a blanket basis for all claims, is no longer good law after the United States Supreme Court in Georgia said that on a claim-by-claim basis, abrogation needs to be, under title II, needs to be investigated. And I'd note that that third factor states that, you know, in a case where there is no constitutional violation like here, there needs to be a determination as to whether Congress validly abrogated immunity on a prophylactic basis as to that class of conduct. Counsel, I do want to ask you about that, because assuming the reason why the bar is entitled to sovereign immunity is because it is an arm of the judiciary and part and parcel of the judiciary, then why isn't this case controlled by Lane? Which, I mean, if there is a historical record of discrimination with respect to access to judicial services, which I think is how the court in Lane characterized it, I think we would all concede that access to representation and diversity in the bar, it's in your own statute that, you know, sets forth the purposes and mission of the bar, is in part to increase the diversity of the profession, in part to improve the administration of justice, in part to improve accessibility of services. So if you are providing judicial services because you are part of the judiciary, then why doesn't this case fall into the class of cases for which sovereign immunity was validly abrogated under Lane? Because, Your Honor, this case does not actually involve the right of access to court. That's a right that we all have, whether we are attorneys or not. This court has previously held that there's no fundamental rights to be an attorney. You're entitled to the minimal procedural due process. That's consistent with what the United States Supreme Court held in the Schwari case, where it declines to say whether it was even a right or a privilege, but just said, you know, your opportunity to become a lawyer should not be arbitrarily denied. Mr. Cohn does not allege that he was ever denied access to court. And becoming an attorney allows one to represent others in court, and the states have a strong and a historic interest in setting standards for admission to protect the public. I do agree with you, Your Honor, and it is one of our statutory imperatives that public protection is our highest function and that that includes access to and inclusion in the legal profession, but it does not rise to the level of a fundamental right. Well, it seems that the legislature, though, has expressly linked representation in the bar and the bench with access to justice and judicial services. So are you saying that's not actually a sufficient link for Congress to have said we're going to act prophylactically? And one of the ways in which we're going to ensure that there are no violations of disabled persons' constitutional rights is to help to ensure that they have representation in the legal profession? Your Honor, I don't believe that that would be a congruent and proportional response or remedy to any history of unconstitutional behavior by the courts. Setting aside the wonderful policy of the state of California, we're here talking about the federal constitutional rights, and Lane measured proportionality and congruence for the particular harm at issue, and that was literal access to the courts, and found there to be congruence and proportionality as to that class of conduct. Here, there would be no proportionality and congruence in applying the ADA to the accommodations decisions. There is no fundamental right in the United States Constitution at issue. It's not a case about irrationally denying all access, physical or otherwise, to the disabled. This is really a case more like Garrett, where rational basis applied, and the Supreme Court observed that even if, and it didn't, and here, with respect to professional licensing, both the 10th Circuit in Gutman and the 11th Circuit in Renner found that there was no history of unconstitutional conduct identified by the Congress in this context, but even if there had been, in Garrett, the court observed that the ADA would not be congruent and proportional because of how much rationally based state conduct it was subject to states to suit for. Here, what we're really discussing is that the prime issue was whether Mr. Cohn would get double time or triple time on his exam. The State Bar, acting for the State Supreme Court, had a rational basis in coming to a different conclusion that he did in our effort to ensure a level playing field for all bar applicants. So I think that Mr. Cohn's counsel pointed to Lane and Georgia, but I think the more apt comparison for the actual prophylactic application analysis would be the Garrett test. Can I shift focus while you're getting your drink? If we were to adopt the three-factor test, which way would the intent factor go, in your view? To me, the fact that the state's allowing it to sue and be sued might be an intent to have it as a separate entity, so if you could address that. Well, certainly. Looking at the intent factors that Hess and the D.C. Circuit looked at, first of all, you look at what has the state said about the function, and here the Supreme Court has said that we are its administrative arm for purposes of attorney commissions and discipline, and that's all that we do. Second, whether the state was delegating what's traditionally a core state function as opposed to a local function, and here, as the Supreme Court recognized in the lease, attorney admissions and regulation has since the time of the Republic been a core state function. In the Hoover and Ronwin cases, in fact, antitrust cases where it found a state bar and an attorney admissions committee to be acting as state instrumentalities for antitrust purposes, it observed that no other function is as close to the core of the state's power to protect the public. And finally, courts look at whether states treat it as a state agency for other purposes, and here the state does in numerous areas. We're subject to the public records law, to the state public purchasing policies, state conflict of interest. We are treated. The state has indicated its intent. But are other state agencies able to sue and be sued? I don't know, Your Honor. I do know that I've seen a lot of state agencies' names in titles of cases, certainly, so they are named. I mean, for another agency, it would be the Attorney General's Office sitting in your shoes, wouldn't it? I'm sorry. I'm just thinking if it were a different state agency dealing with a lawsuit, it wouldn't be your counsel but the Attorney General's Office that would be representing that agency, wouldn't it? I think it depends. I know that in the Hirsch case when the state bar was ruled to be an arm of the state, the Attorney General did represent the state. Should we care more about what the Supreme Court says about the state bar or state statute when we're thinking about intent? So, for example, how much weight should we give to the Supreme Court's own discussion of this in its cases as opposed to statutes saying that the state bar can sue and be sued on its own accord and must pay out their own liabilities? How do we weigh those two different things? Well, I think here you need to focus mainly on the Supreme Court because the Supreme Court has exclusive and original primary jurisdiction and uses all three phrases over the regulation and practice of law. In the rules of court and even the state bar act make clear that nothing in this act shall be interpreted as, again, I'm forgetting this, it recognizes the Supreme Court's inherent and exclusive authority over the practice of law in the state. There's separation of powers, case law. One is the Santa Clara case where the Supreme Court recognizes that the legislature has a role but it strikes down legislation if it finds them to impede or be inconsistent with the Supreme Court's primary role in regulating attorney admissions. Before your time is up, I was hoping that you can speak on the rehabilitation claim. Can you explain to me why receiving federal financial assistance under the Rehabilitation Act is a jurisdictional question and not a merits question? I was confused by the district court's dismissal on that basis. Certainly, Your Honor. Well, you know, first of all, I think that it could be dismissed either under 12b-1 or 12b-6. Both would be proper grounds for affirming. Well, you didn't cite any cases showing that that fourth element is jurisdictional, at least from what I saw. And it seemed like dismissal under 12b-1 is only proper for jurisdiction and the court has jurisdiction over the case due to the federal questions. But I guess I wanted to give you an opportunity to speak to that. Well, certainly, you know, under the Bell Standard, which Cohen argues makes 12b-1 dismissal inappropriate here, a claim shouldn't be dismissed under jurisdictional grounds unless the jurisdictional allegations were immaterial and made solely for the purpose of obtaining jurisdiction. And here it is he has made an allegation with no factual basis. His actual allegation in the First Amendment complaint was that the state bar as a government agency in benefits from federal funding. So that was an improper allegation because now, years later, he's still offered no factual basis for that allegation. But didn't you weigh in with some sort of affidavit or something, a declaration from somebody saying, as far as I know, we don't get federal funding? And so it just seemed like I'm just questioning whether or not that was appropriate at that stage. And I guess even if that's true, does he have an opportunity to amend at this point? Well, you know, again, he has not actually, under the Iqbal Standard, pleaded any facts that would suggest that the state bar is a program or activity that receives federal financial assistance. He did not, at the district court level, put forth any argument that would amount to a non-feudal amendment. And he still hasn't. What he's done in his briefing here is to make basically speculation that funds provided to other organizations constitute federal financial assistance to the state bar with no allegation at all that any of those organizations give money to the state bar. He also points to the bar's speculated receipt of interest on federal bonds, but this court's holding in Jacobson v. Delta Airlines at 742 F2D 1202 makes clear that that wouldn't constitute federal financial assistance because contracts in which goods or services are bought or sold from the federal government at fair market value, like buying bonds on the open market, do not constitute federal financial assistance. So your time is up, so I would like for you to make a concluding statement. Let me see if anybody else has any questions. I do have one more question. I want to go back to the sovereign immunity issue, and I just want to get some clarity on your position. If we adopted the three-factor test that you are advocating for and we applied it in the way that you are advocating for, would Crow be abrogated, or what meaningfully distinguishes, in your view, CSB from OSB, and why would Crow remain correctly decided? Crow, as we discussed, involved political speech. It had some broad language. If it were interpreted as meaning that the Oregon State Bar lacks sovereign immunity, even when it's engaged in missions and discipline on behalf of the state Supreme Court, that would be inconsistent with every case across the country to consider state bars sovereign immunity when they're engaged in those functions, and we would argue would be incorrect. That would be more of an entity-activity distinction. The Supreme Court suggested in the Northern Insurance case that that might be appropriate, and the Eleventh Circuit has said that it is an action-based inquiry. But applying our three-factor test, I think that the Oregon State Bar would still have a strong case to make on intent and control, given that those functions are controlled by the Supreme Court, the admissions and discipline. But again, the fact that the state chose to entrust those activities to an organization that is in many ways non-governmental and that it performs these non-state functions and that it's controlled by the profession rather than, as here, by the three branches of state government, it would have a harder showing under the three-factor test than does the California State Bar. Your concluding statement. Sure. We request that the en banc panel adopt the three-part test set forth by then-Judge Kavanaugh for the D.C. Circuit. This would respect the state's intent that the state bar be an arm of the state. Under state law and the Supreme Court's statements, and given the historic status of attorney admissions and regulation as a core state government function, it would recognize that the state controls the state bar not only by naming the state bar's board but through direct control of the admissions and discipline functions. And it would recognize that state funds are at risk in a federal judgment because state bar property is, by statute, state funds held in the judicial branch of government. It's government property. And because the state controls the bar's revenues and how they are spent, the California Supreme Court even stepped in to order funding when the legislature did not do so. Thank you. Thank you, Your Honor. Thank you. Good afternoon again, Your Honors. I want to first start with one point of departure between the two proposed tests here, which is reference to this word intent. And here's why referencing the word intent in the actual embodiment of the rule statement shouldn't take place. Part of the problem with the Mitchell test is that it encompasses a lot of the sovereign immunity analysis and very specific details, but there are certain facets that aren't embodied by the test. And so there's a lot of excavation of the law that has to happen by the court before it can actually apply the law of sovereign immunity. If intent is made the focus of one of the factors, it's going to, again, lead courts astray because intent, in and of itself, isn't the focus of the analysis. It's the independence of the entity from the state. And certainly the legislative intent or California Supreme Court's intent might implicate that analysis. But, for example, if the legislature intended to create an arm of the state or something that was most certainly not an arm of the state and later on a court ruled, oh, because of the Constitution, state or federal, actually the entity has to act slightly differently. Maybe what the legislator wanted to do can't be done. So the intent isn't the focus of the analysis. It's the independence. Intent may speak to that, but it is not the end all, be all of that analysis. So that's the concern with relying on intent in the rule framework itself. I'd also like to address the State Bar is arguing that the funds of the State Bar are state funds and, therefore, this treasury factor somehow weighs in favor of sovereign immunity. Whether or not it's government funds or not is not the question. The question, going back to the twin aims or goals, purposes for sovereign immunity, is is it going to affect state solvency? The state has created this barrier very intentionally that the State Bar's debts are not going to reach the state coffers. Unlike most cases, the court actually doesn't have to wrestle with the idea of whether or not the state's going to step in and intervene. The state has black and white said, no, the State Bar's debts are its own. And that turns to Alaska Cargo. The Supreme Court actually cited Alaska Cargo in Hess, and it gave some analysis of Alaska Cargo in this concept of, oh, the defendant entity is providing critical services. Maybe the state might be compelled to intervene. How do we deal with that? And in Hess, the Supreme Court said, well, the port authority there is designed to be self-sufficient financially, and therefore this Alaska Cargo line of reasoning is wholesale inapplicable because it is designed to be self-sufficient. The Alaska Railroad, on the other hand, was required by state law because it was so crucial in the context of the Alaskan wilderness that it has to ask the state for funding if its operations are going to be jeopardized by an insolvency event. Here we have the exact opposite. The state has enacted a law saying the State Bar's debts are its own. Further, what would practically speaking happen if the State Bar was met with an insolvency issue? There's no reason to believe that the state would fund it. In fact, what funds the State Bar now is member dues, and the state places caps. So if there is an insolvency event for the State Bar, all the state needs to do is raise the cap. I, as a California lawyer, Mr. Cohn, as a California lawyer, and the rest of the California lawyers, we're going to be the ones paying for the State Bar's debts, not the state. And that distinction is critical. I see my time has elapsed. I'll let you make a concluding statement. Thank you, Your Honor. Respectfully, Mr. Cohn requests that the Court reverse the decision of the District Court. Thank you. So I want to thank you both, Mr. Michael and Mr. Dewar, for your oral argument presentations in this really interesting case. You've done a really admirable job here in presenting and representing each side. So thank you very much. The case of Benjamin Cohn v. State Bar of California is now submitted, and we are adjourned. Thank you. All rise. This Court, for this session, stands adjourned.
judges: MURGUIA, RAWLINSON, IKUTA, OWENS, BRESS, FORREST, BUMATAY, SUNG, SANCHEZ, THOMAS, MENDOZA